UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

FILED
Scott L. Poff, Clerk
United States District Court

By staylor at 3:12 pm, Dec 18, 2017

CHRISTIAN MURILLO QUIRINO,
RICARDO HERNANDEZ QUINTERO,
OSVALDO RUVACALBA HAROS, and
JOSE RODRIGUEZ GARCIA,

    Plaintiffs,

v.

FRANCISCO SAUCEDO, and
THE PINE STRAW MAN, LLC,

    Defendants.

Civil Action No.: 2:17-cv-153

## COMPLAINT

### I. PRELIMINARY STATEMENT

1. Plaintiffs are agricultural guest workers from Mexico who were recruited and hired by Defendants to work in Defendants' pine straw harvesting operations in South Georgia in 2017. Plaintiffs bring this action to vindicate their rights under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and under Georgia contract law. Plaintiffs seek their unpaid wages, statutory liquidated damages, unreimbursed expenses, damages that arose from Defendants' breaches of contract, pre- and post-judgment interest, declaratory relief, costs, and reasonable attorneys' fees.

### II. JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to:

    (a)    28 U.S.C. § 1331 (Federal Question);

    (b)    29 U.S.C. § 1337 (Interstate Commerce);

1

    (c)    29 U.S.C. § 216(b) (FLSA); and

    (d)    28 U.S.C. § 1367 (Supplemental).

3. This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' federal FLSA claims that they form part of the same case or controversy under Article III, Section II of the U.S. Constitution.

4. This Court has the power to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)-(d), and S.D. Ga. Local Rule 2.1, because Defendant Francisco Saucedo resides within this district and division. Moreover, Defendant The Pine Straw Man, LLC operates its business in Appling County, Georgia.

### III. PARTIES

6. At all times relevant to this complaint, Plaintiffs Christian Murillo Quirino, Ricardo Hernandez Quintero, Osvaldo Ruvacalba Haros, and Jose Rodriguez Garcia were citizens of Mexico who were admitted into the United States on a temporary basis, to work for Defendants under the auspices of the H-2A program, 8 U.S.C. § 1188 and 20 C.F.R. § 655.0, *et seq.* Their FLSA consent forms are attached as part of composite Exhibit A.

7. Defendant Francisco Saucedo, doing business as The Pine Straw Man, LLC, is a resident of Appling County, Georgia.

8. Defendant The Pine Straw Man, LLC is a dissolved Georgia corporation, which operates a pine straw harvesting and delivery business in Appling County, Georgia.

9. At all times relevant to this action, all Defendants were employers of Plaintiffs, under the FLSA, 29 U.S.C. § 203(g), in that they suffered or permitted Plaintiffs to work.

10. At all times relevant to this action, all Defendants had the right to control the manner and means by which Plaintiffs' work was accomplished.

11. Under Defendants' employment, Plaintiffs were harvesting pine straw for sale in interstate commerce.

12. Under Defendants' employment, Plaintiffs handled or otherwise worked on goods or materials that had been moved in or produced for interstate commerce.

13. At all times relevant to this action, Defendants had annual gross volume of sales or business of at least $500,000.

**IV. STATUTORY AND REGULATORY STRUCTURE OF THE H-2A PROGRAM**

14. An agricultural employer in the United States may bring temporary foreign workers ("H-2A workers") to the United States if the United States Department of Labor ("USDOL") certifies that (1) there are not enough U.S. workers to perform the job, and (2) the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1). These provisions, along with the implementing federal regulations, are commonly referred to as the "H-2A program."

15. Under the H-2A program, employers must file a temporary labor certification application with the USDOL's Employment and Training Administration. 20 C.F.R. § 655.130. The application must include a job offer, known as a "job order," which is used in the recruitment of both U.S. and H-2A workers and becomes the work contract of the employed workers. *See* 20 C.F.R. § 655.103(b) (definition of "work contract").

16. If an employer's job order meets the minimum federal regulatory requirements and is otherwise valid, U.S. worker availability is tested by use of the interstate Employment Service

system[1] and by the employer's own hiring efforts. If it is determined that sufficient U.S. workers are not available to fill the jobs, the USDOL certifies the need for temporary foreign workers, and the Department of Homeland Security issues H-2A visas for the number of job opportunities requested by the employer and not filled by U.S. workers.

17. The job order must comply with the applicable H-2A regulations that establish the minimum benefits, wages, and working conditions which must be offered in order to avoid adversely affecting similarly-employed U.S. workers. 20 C.F.R. § 655.121(a)(3).

18. The H-2A regulations require, in part, the following:

(a) If the worker is paid by the hour, the employer must pay the worker at least the Adverse Effect Wage Rate ("AEWR"), or the Federal or State minimum wage rate, in effect at the time work is performed, whichever is highest, for every hour or portion thereof worked during a pay period. 20 C.F.R. § 655.122(l).

(b) If the worker is paid on a piece rate basis and the worker's earnings do not result in average earnings of at least the AEWR, then the worker's pay must be supplemented so that the worker's earnings are at least as much as the worker would have earned had the worker been paid the AEWR. 20 C.F.R. § 655.122(l)(2)(i).

(c) The employer either must provide each worker with three meals per day or must furnish free and convenient kitchen facilities to the workers so that the workers can prepare their own meals. Where the employer provides the meals, the job order must state the charge, if any, to the worker for such meals. 20 C.F.R. § 655.122(g).

---

[1] Employment Service (ES) refers to the national system of public ES offices described under the Wagner-Peyser Act. Employment services are delivered through a nationwide system of one-stop centers, and are managed by State Workforce Agencies (SWA's), and funded by the USDOL. *See* 20 C.F.R. § 651.10, (definition of "Wagner-Peyser Act Employment Service").

(d) If the worker completes 50 percent of the work contract period, the employer must pay the worker for reasonable costs incurred by the worker for transportation and daily subsistence from the place from which the worker has come to work for the employer to the place of employment. 20 C.F.R. § 655.122(h)(1).

(e) The employer must keep accurate and adequate records with respect to the workers' earnings, including but not limited to: field tally records, supporting summary payroll records, and records showing the nature and amount of the work performed; the number of hours of work offered each day by the employer; the hours actually worked each day by the worker; the time the worker began and ended each workday; the rate of pay (both piece rate and hourly, if applicable); the worker's earnings per pay period; the worker's home address; and the amount of and reasons for any and all deductions taken from the worker's wages. 20 C.F.R. § 655.122(j)(1).

(f) The employer must furnish to each worker, on or before each payday, a written statement that includes, among other items: the worker's total earnings for the pay period; the worker's hourly rate and/or piece rate of pay; the hours of employment offered to the worker; the hours actually worked by the worker; an itemization of all deductions made from the worker's wages; and, if piece rates are used, the units produced daily.
20 C.F.R. § 655.122(k).

## V. STATEMENT OF FACTS

19.     On or around December 2016, Defendants submitted job order number 920079651 (hereinafter, "the Job Order") to the Georgia Department of Labor and an Application for Temporary Employment Certification, (hereinafter, "the Application for Certification"), to the USDOL.

20. The approved Job Order, (Attached as Exhibit B), included, but was not limited to, the following terms:

(a) Work to begin on January 30, 2017 and continue until June 30, 2017.

(b) Anticipated hours of work of at least 35 hours per week.

(c) Job duties to include harvesting blueberries, bailing pine straw, field and camp sanitation, maintenance, loading and unloading, pulling weeds, raking and "plastic."

(d) An hourly wage of not less than the AEWR[2], or $10.62 per hour, a piece rate of $0.85 per bail of pine straw, and a piece rate of $0.50 per pound of blueberries.

(e) Free housing that met local, state and federal requirements, including adequate kitchen facilities with utensils to allow workers to cook their own meals.

21. The terms and conditions of the Job Order, together with the requirements of 20 C.F.R. § 655, constituted a job offer.

22. This job offer, when accepted, created a work contract between Defendants and each Plaintiff who accepted the offer.

23. The work contract at issue here incorporates a promise to "comply with applicable Federal and State minimum wage . . . and other employment-related laws" including the FLSA. *See* 20 C.F.R. § 655.135(e).

24. By promising to pay the federally-mandated wage rate, Defendants also promised to pay that wage free and clear without deductions for items for the employers' benefit or without reducing the workers' wages by shifting costs to those workers.

25. On behalf of Defendants, Plaintiffs were recruited in their hometowns in Mexico, to work for Defendants under the terms of the Job Order.

---

[2] Although the job order lists an hourly rate of $10.59, the applicable adverse effect wage rate ("AEWR") for 2017 was $10.62 per hour, see 81 Fed. Reg. 94422 (Dec. 23, 2016).

26. Plaintiffs accepted the offers of employment under the terms of the Job Order.

27. Plaintiffs incurred various immigration, processing, and travel-related expenses in order to come to work for Defendants.

28. In order to comply with Defendants' hiring processes, Plaintiffs traveled, at their own expense, from their hometowns in Mexico, to the U.S. Consulate in Monterrey, Mexico for the interview necessary to obtain an H-2A visa.

29. Plaintiffs incurred expenses for lodging while they completed visa application forms, attended consular interviews, and waited for the visa applications to be processed and for the visas to be issued.

30. Following the issuance of their H-2A visas, Plaintiffs were required to purchase, at their own expense, bus tickets to travel from the U.S. Consulate in Mexico to Defendants' Georgia operations.

31. At the U.S. border near Laredo, Texas, each Plaintiff paid a $6.00 fee to the Bureau of Customs and Immigration Services for the issuance of Form I-94, which is required to enter the U.S.

32. Plaintiffs incurred daily subsistence expenses while traveling from the recruitment location to the place of employment.

33. At the time Plaintiffs incurred these daily subsistence expenses, the minimum daily subsistence expense allowed, as published in the Federal Register and as incorporated into Plaintiffs' contracts was $12.09. *See* 81 Fed. Reg. 9885 (Feb. 26, 2016).

34. Plaintiffs entered the U.S. on or around February 27, 2017.

35. The expenses described in paragraphs 27 to 32 were costs necessary to enter the U.S. as an H-2A worker and were incurred for the benefit of Defendants, as defined by 29 C.F.R. §§ 531.32(c) and 778.217.

36. The expenses described in paragraphs 27 to 32 were made before receipt of Plaintiffs' first paychecks.

37. Defendants did not reimburse Plaintiffs for any of the expenses described in paragraphs 27 to 32.

38. Defendants' failure to reimburse Plaintiffs for these expenses brought Plaintiffs' first week wages below the federal minimum wage and the AEWR.

39. Defendants housed Plaintiffs in overcrowded housing that did not have adequate kitchen facilities.

40. Defendants charged Plaintiffs a fee for meals. This fee was not disclosed in the job order, as required by 20 C.F.R. § 655.122(g).

41. Plaintiffs worked for Defendants bailing pine straw, doing maintenance work, clearing the fields, and loading cargo, among other tasks.

42. Defendants paid Plaintiffs solely on a piece-rate basis, such that they were paid according to the amount of bales of pine straw gathered, without regard to the number of hours worked.

43. Defendants failed to pay Plaintiffs for all compensable hours worked, including for time spent doing other tasks such as maintenance work, clearing the fields, loading cargo, and waiting at the jobsite for task assignments.

44. Defendants required Plaintiffs to purchase, at their own expense, some of the tools necessary for the job. These expenses were incurred by Plaintiffs for the benefit of Defendants.

45. Defendants did not reimburse Plaintiffs for the expenses described in paragraph 44.

46. Plaintiffs' weekly earnings fell below the applicable federal minimum wage.

47. Plaintiffs' weekly earnings fell below the contractually-promised wage of $10.62 per hour.

48. Defendants did not supplement Plaintiffs' weekly earnings to ensure that they received the wages required by the FLSA and their employment contracts.

49. Defendants failed to make, keep, preserve, and retain accurate employment records, as required by the FLSA, 29 C.F.R. § 516.2(a), and by the H-2A regulations, 20 C.F.R. § 655.122(j).

50. Defendants did not provide Plaintiffs with complete and regular earning statements containing the information required by the H-2A regulations, 20 C.F.R. § 655.122(k).

51. Plaintiffs completed at least 50 percent of the work contract period under Defendants' employment.

## COUNT I: FAIR LABOR STANDARDS ACT

52. Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

53. Defendants failed to pay Plaintiffs at least the required federal minimum wage rate of $7.25 for every compensable hour of labor performed in a workweek, in violation of 29 U.S.C. § 206(a).

54. The violations set forth in this Count resulted, in part, from Defendants' failure to reimburse the expenses described in paragraphs 27 to 32 and 44, which Plaintiffs incurred primarily for the benefit of Defendants. These expenses brought Plaintiffs' earnings below the required minimum hourly wage rate.

55.     The violations set forth in this Count also resulted, in part, from Defendants' failure to supplement Plaintiffs' piece-rate wages to equal or exceed the federal minimum wage.

56.     The violations set forth in this Count also resulted, in part, from Defendants' failure to credit and pay Plaintiffs for all compensable time worked.

57.     Pursuant to 29 U.S.C. § 216(b), as a result of Defendants' violations of the FLSA set forth in this Count, Plaintiffs are entitled to recover the amount of their unpaid wages and an equal amount as liquidated damages for each workweek in which they earned less than the applicable minimum wage.

## COUNT II: BREACH OF CONTRACT

58.     Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

59.     Defendants offered employment on the terms and conditions set out in the Job Order and as described in paragraphs 18 and 20.

60.     Plaintiffs accepted Defendants' offers.

61.     Defendants failed to pay Plaintiffs at least the AEWR of $10.62 per hour.

62.     Defendants failed to maintain earning records, in violation of 20 C.F.R. § 655.122(j).

63.     Defendants failed to furnish to Plaintiffs on each pay period a written earning statement, in violation of 20 C.F.R. § 655.122(k).

64.     Defendants failed to provide free housing with adequate kitchen facilities that met local, state and federal requirements.

65.     Defendants charged Plaintiffs a fee for meals. This fee was not disclosed in the job order, in violation of 20 C.F.R. § 655.122(g).

66. Defendants did not pay or reimburse Plaintiffs for their subsistence and travel expenses from the place where the workers were recruited to the location of the work in the United States.

67. Defendants did not reimburse Plaintiffs for the work tools that Plaintiffs purchased for the benefit of Defendants.

68. As a direct consequence of Defendants' breaches of Plaintiffs' employment contracts, Plaintiffs suffered economic injury.

69. Defendants are liable to Plaintiffs for the damages that arose naturally and according to the usual course of things from Defendants' breaches, as provided by federal common law and O.C.G.A. § 13-6-2, including unpaid wages and prejudgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

(a) Declare that Defendants violated the FLSA as specified in Count I;

(b) Declare that Defendants breached their employment contracts with Plaintiffs as specified in Count II;

(c) Grant judgment against Defendants, jointly and severally, in favor of each Plaintiff, in the amount of their respective unpaid wages as proved at trial, plus an equal amount in liquidated damages, pursuant to 29 U.S.C. § 216(b);

(d) Grant judgment against Defendants, in favor of each Plaintiff, in the amount of each Plaintiff's damages as they arose naturally and according to the usual course of things from such breach and such as the parties contemplated, when the contract was made, as the probable result of such breach;

(e) Award Plaintiffs pre- and post-judgment interest as allowed by law;

(f)     Award Plaintiffs attorney's fees and the costs of this action; and

(g)     Award Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

This 18th day of December, 2017.        Respectfully submitted,

*/s/ Solimar Mercado-Spencer*
Solimar Mercado-Spencer
Lead Counsel
Georgia Bar No. 686614
Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:     (404) 463-1623
E-mail: smercado-spencer@glsp.org

*/s/ Lauren Hoff-Downing*
Lauren Hoff-Downing
Georgia Bar No. 626374
Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:     (404) 463-1623
E-mail: lhoff-downing@glsp.org

*/s/ Lisa J. Krisher*
Lisa J. Krisher
Georgia Bar No. 429762
Georgia Legal Services Program
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:     (404) 463-1623
E-mail: lkrisher@glsp.org

*Attorneys for Plaintiffs*